NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3466
_____

SCREEN ACTORS GUILD – AMERICAN FEDERATION OF
TELEVISION AND RADIO ARTISTS, AFL-CIO

Appellee

v.

SHERIDAN BROADCASTING NETWORKS, Sheridan
Broadcasting Corporation, Ronald Davenport, Jr.
and Ronald Davenport, Sr.

Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:18-cv-455)
Magistrate Judge:  Hon. Maureen P. Kelly
_____

Submitted Under Third Circuit LAR 34.1(a)
On November 20, 2020

Before: JORDAN, KRAUSE, and RESTREPO, *Circuit Judges*

(Filed December 18, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

The Screen Actors Guild – American Federation of Radio Artists, AFL CIO (the "Guild") seeks unpaid wages, withheld union dues, and various other expenses and costs due under the terms of a collective bargaining agreement with Sheridan Broadcasting Networks ("Sheridan"). Sheridan and the Guild arbitrated this dispute as required by their agreement. At arbitration, Sheridan stipulated that it owed the entire amount the Guild sought. After Sheridan did not pay that sum, as awarded after arbitration, the Guild sued for enforcement of the award, naming as Defendants Sheridan, two of its officers, and an affiliated corporation. It also sought an additional 25% in liquidated damages, attorneys' fees, and joint and several liability against all of the Defendants based on the Pennsylvania Wage Payment and Collection Law ("WPCL").

We are asked to decide first whether the Defendants waived their defense to liability under the WPCL, and second whether the WPCL is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(c). The Defendants, of course, say no to the first question and yes to the second, and we agree. They did not waive their opportunity to argue that the state statute is preempted by the LMRA and that they therefore have no liability under the WPCL. The Guild can claim neither prejudice nor surprise in facing that defense. And the LMRA does indeed preempt the WPCL in this case. A contrary conclusion would result in inconsistent rights being afforded to employees working in different states covered by the same collective bargaining agreement, which is the exact harm Congress sought to avoid in passing the LMRA.

## I. BACKGROUND

The Guild and Sheridan are parties to a collective bargaining agreement (the "CBA"), which includes an arbitration clause and covers the time period between November 8, 2016 and November 7, 2019.[1]  For collective bargaining purposes, the Guild represents "all regular full-time and part-time newspersons, audio journalists and producers employed by [Sheridan] in the United States."  (App. at 47.)  In accordance with the CBA's dispute resolution procedure, the Guild filed a grievance against Sheridan for alleged violations of the CBA, claiming that Sheridan had terminated all Guild employees on August 29, 2017, without giving proper notice, and further had failed to remit union dues and to pay the terminated employees their wages, out-of-pocket expenses, and severance owed.  After the parties could not resolve their dispute, it went before an arbitrator who awarded the Guild $240,052.11, an amount to which Sheridan stipulated.  Despite that stipulation, Sheridan did not pay the award.

---

[1] Schedule I, Section 11 of the CBA describes the two-step procedure for handling disputes, with step one being the filing of a grievance, and, if a dispute remains, step two being arbitration.  At arbitration:

> The arbitrator shall only have the authority to interpret compliance with the provisions of this Agreement, and shall not have authority to add to, subtract from or alter in any way the provisions of this Agreement. The decision of the arbitrator on any issue properly before him/her shall be final and binding upon the Company, the Union and the employee or employees involved. The cost of arbitration, including the salary and expense incident to the services of the arbitrator, shall be shared equally by both parties.

(App. at 60.)  The CBA was signed by Ronald Davenport, Jr., in his capacity as General Counsel for Sheridan. No individual was party to the CBA, and the CBA did not define the term "employer" to include individuals.

The Guild then filed suit against Sheridan, as well as Sheridan Broadcasting Corporation ("SBC"), Ronald Davenport Sr., and Ronald Davenport Jr. (the "Davenports"). The Guild alleged breach of contract for failure to comply with the arbitration award, conversion of union dues, and violation of the WPCL.[2] It requested judgment in the amount of $325,827.64, punitive damages in the amount of $250,000.00, and attorneys' fees and costs. The Defendants did not file an Answer, so the Guild moved for entry of default judgment. The Defendants then answered, admitting numerous facts, including that the Davenports are "officer[s] and agent[s] of [Sheridan] within the meaning of Section 2.1 of the WPCL." (App. at 46, 102.)

The Guild was prepared to file a motion for judgment on the pleadings, but the Defendants "indicat[ed] interest in resolving all claims" by a "final written settlement agreement." (App. at 13.) At a settlement conference with the District Court,[3] the Defendants agreed to provide a draft consent judgment, but they failed to follow through, so the Court suggested that the Guild file its motion for judgment on the pleadings. It did, and the District Court granted judgment in favor of the Guild and against Sheridan and SBC for breach of contract, and against all of the Defendants for conversion and for violating the WPCL. The judgment was for $325,827.64. The Court later granted the

---

[2] The WPCL authorizes "[a]ctions by an employee, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction[.]" 43 Pa. Stat. § 260.9a(b). It defines employer to include "any agent or officer[,]" *id.* § 260.2a, and "allow[s] costs for reasonable attorneys' fees of any nature to be paid by the defendant[,]" *id.* § 260.9a(f).

[3] The parties consented to the jurisdiction of the Magistrate Judge.

4

Guild's motion for attorneys' fees in the amount of $50,994.16, pursuant to the WPCL. Punitive damages were not awarded.

The District Court's rulings were premised on an acceptance of the Guild's argument that the WPCL was not preempted by the LMRA. The Court reasoned that Section 301 of the LMRA "pre-empts state law … insofar as resolution of the state law claims require[s] interpretation of a collective bargaining agreement[,]" [sic] but that here, "interpretation of the CBA is not needed to resolve [the Guild's] WPCL claim." (App. at 18 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 n.8 (1988)).) The Court concluded that our decision in *Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996), in which we held the WPCL was preempted, *id*. at 1120-21, was not controlling because our "primary concern" there was "the ability of employees to bypass CBA grievance procedures by suing corporate officers in state court[.]" (App. at 19.) Lastly, the Court noted that the Defendants had "voluntarily and repeatedly conceded individual and collective liability to Plaintiff's WPCL claim …, and so have waived any defense to this claim." (App. at 19.)

The Defendants timely appealed.

## II. DISCUSSION[4]

The Defendants present us with only one issue. They say, "the District Court err[ed] by holding that the Appellee's claims under the Pennsylvania [WPCL] were not preempted by the [LMRA.]" (Opening Br. at 2.) Because the WPCL was the basis for holding the Davenports personally liable, awarding liquidated damages, and awarding attorneys' fees, the Defendants ask that those rulings be overturned. They argue that the LMRA preempts any action in state law that is based on or requires the interpretation of a collective bargaining agreement. The Guild responds that, because interpretation of the CBA was already completed during the arbitration process and because the WPCL is only being used to enforce an established right, application of the WPCL is not preempted.

The Defendants have the more persuasive position, but before turning to the merits, we first consider the Guild's argument that the Defendants waived their

---

[4] The District Court had subject matter jurisdiction to enforce the arbitration award under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, along with the usual federal question jurisdiction accorded by 28 U.S.C. § 1331. *See Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) ("§ 185(a) … jurisdiction is understood to include a request to enforce (or vacate) an award entered as a result of the procedure specified in a collective bargaining agreement for the arbitration of grievances." (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 595-96 (1960))); *see also E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57 (2000) (reviewing the enforcement of an arbitration award that resulted from a dispute over a collective bargaining agreement). We have jurisdiction pursuant to 28 U.S.C. § 1291.

The standard of review for a grant of judgment on the pleadings is plenary. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988). "We review a District Court's decision as to the waiver of an affirmative defense for abuse of discretion." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 921 F.3d 98, 104 (3d Cir. 2019).

6

preemption defense by failing to raise it with particularity in their Answer and by failing to move to dismiss. (*See* Answering Br. at 9 (citing *Systems, Inc. v. Bridge Elecs. Co.*, 335 F.2d 465, 466 (3d Cir. 1964)).)

## A.   Waiver

Despite the waiver arguments made in its briefing, the Guild appears to acknowledge in a supplemental filing that preemption has in fact always been in dispute. (*See* Appellee's Rule 28(j) Letter at 1 n.1 ("The only matter that has ever been in dispute is the assertion by Ronald Davenport, Sr. and Ronald Davenport, Jr. that application of the [WPCL] in this case is preempted by the [LMRA.]").) The Defendants no doubt welcome that concession. They contend that they preserved their preemption defense by pleading a failure to state a claim and by raising preemption at a suitably early moment in the litigation – in their response to the Guild's motion for judgment on the pleadings.

The District Court decided "that all defenses to liability have been waived" (App. at 14), elaborating that the "Defendants have voluntarily and repeatedly conceded individual and collective liability to Plaintiff's WPCL claim before this Court, and so have waived any defense to this claim." (App. at 19.) But while the Defendants may have conceded certain facts alleged in the Guild's Complaint, they did not concede the applicability of the WPCL, nor did they accept liability for the enhanced damages and expanded liability created by that statute.

The District Court appears to have taken Sheridan's acceptance of responsibility for its obligations under the CBA, as awarded by the arbitrator, as an acceptance by all

7

the Defendants of responsibility for statutory enhancements under the WPCL.[5] It was

not, although some of the Defendants' statements tended in that direction. The Court was

also understandably troubled by what it perceived as the Defendants' "delays and

gamesmanship," but the proper redress for such conduct should begin with non-

dispositive sanctions, not waiver of a potentially meritorious defense. (App. at 14.) *See*

*McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 217-18 (3d Cir. 2003) ("We have

emphasized this Court's policy of favoring litigation on the merits, rather than imposing

dismissals with prejudice or a default judgment. In *Hewlett v. Davis*, 844 F.2d 109, 113

(3d Cir. 1988), we stated that '[t]hese must be sanctions of last, not first, resort.'").

Review of the Complaint and Answer do not reflect an admission that the WPCL

applies. The Defendants denied the allegations in Paragraphs 29 through 32 of the

Complaint that assert the WPCL claim, and they raised relevant affirmative defenses.[6]

---

[5] The District Court said:

> It is clear to this Court, based upon the conduct displayed and
> representations made to the Court, that at all times and in all
> proceedings before this Court up to February 25, 2019,
> Defendants have conceded individual and joint liability for all
> amounts owed arising out of the Award of Arbitration (and
> have consented to the entry of judgment), but through delays
> and gamesmanship, are now engaging in behavior that
> dishonors this Court and the impacted employees. …
> Plaintiff was invited to file a Motion for Sanctions, but has
> thus far refrained from seeking additional relief that would
> otherwise be available.

(App. at 14.)

[6] Although boilerplate does not on its own carry the day, the Defendants did plead
that "[t]he Complaint fails to state a claim upon which relief can be granted" and that

8

There was not a relinquishment or forfeiture of legal defenses to joint liability or to enhanced damages under the WPCL.

Importantly, we are here dealing with an alleged waiver of an LMRA preemption defense, a defense serious enough that it has been permitted even when first raised on appeal, given the "compelling policy in favor of uniform application of federal law in actions to enforce labor contracts." *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1215 (6th Cir. 1987) (citation omitted); *see also Sweeney v. Westvaco Co.*, 926 F.2d 29, 40 (1st Cir. 1991) ("[A] court should prove more willing to make an exception from the normal waiver rule when a § 301 pre-emption question is at issue than in the ordinary case."). That policy strengthens our decision to address this matter on the merits.

## B.     Preemption

The Supreme Court, our sister courts, and our own decision in *Antol* teach that the Defendants' position is the correct one – the LMRA broadly preempts suits arising out of rights embodied in a CBA. *See, e.g.*, *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1445 (2019); *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206-07 (2d Cir. 2019); *Antol*, 100 F.3d at 1117. That preemption is necessary to ensure consistency in the enforcement of rights afforded employees under the same CBA, even if those employees are working in different states.

All aspects of this dispute can be decided by looking to *Antol*, where we held WPCL claims preempted by section 301 of the LMRA and provided a thorough

---

"Plaintiff is not entitled to any damages or relief not specifically provided for under the applicable statutes and regulations." (App. at 105-06.)

9

background on the purpose and contours of LMRA preemption. We explained that, "[a]lthough section 301 refers only to jurisdiction, it has been interpreted as authorizing federal courts to fashion a body of common law for the enforcement of collective bargaining agreements" in order to provide "uniform interpretation of contract terms to aid both the negotiation and the administration of collective bargaining agreements." *Antol*, 100 F.3d at 1115 (citations omitted). We noted that "[n]ational policy is particularly important in the enforcement of arbitration provisions, a common element of most collective bargaining agreements." *Id.* (citation omitted). We thus distilled the principle that "claims based squarely on a collective bargaining agreement or requiring analysis of its terms are preempted by section 301 and are removable to the federal courts." *Id.* at 1117 (citations omitted).

Of course, "not all state law is preempted." *Id.* at 1115. For instance, "the [Supreme] Court [has] concluded that an employee could enforce a state law banning retaliatory discharge, even though she was covered by a collective bargaining agreement that provided for arbitration for claims of discharge without cause" because the state law matter was "outside the 'arbitral realm' of collective bargaining agreements." *Id.* (quoting *Lingle*, 486 U.S. at 411). It has also "concluded that federal labor law was not in conflict with a state statute that imposed a monetary penalty for each day that passed between an employee's discharge and receipt of payments for wages due." *Id.* at 1116 (citing *Livadas*, 512 U.S. 107).[7]

---

[7] The District Court relied extensively on *Livadas*. That reliance was misplaced. In *Livadas*, a California law awarded a specific monetary penalty for each day, post-

10

Nevertheless, we interpreted the Supreme Court's guidance to support our decision that the WPCL was preempted. We recognized that the WPCL "does not create a right to compensation…. [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Id.* at 1117 (alterations in original) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990)). And we said that the "definition [of employer] created by state law, if applied to the [LMRA], would substantially alter the scope and enforcement of the typical collective bargaining agreement." *Id.* at 1120.

The District Court mistook the meaning of *Antol* when it concluded that our "primary concern was the ability of employees to bypass CBA grievance procedures." (App. at 19.) Indeed, bypassing arbitration was a concern, but our primary concern was ensuring consistency in the enforcement of rights in a collective bargaining agreement. *See Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 234 (3d Cir. 1999) ("[T]he underlying reason for section 301 preemption … [is] 'the need for uniform interpretation of contract terms to aid both the negotiation and the administration of collective bargaining agreements.'" (quoting *Antol*, 100 F.3d at 1115)). If the WPCL were enforceable in a circumstance like this, employees of the same company in different

---

severance, that an employee did not receive past wages due. As the Supreme Court noted, "the primary text for deciding whether Livadas was entitled to a penalty was not the [CBA], but a calendar." *Livadas*, 512 U.S. at 124. "[T]he [CBA] is irrelevant to the dispute" because it was not the right to wages at issue, it was the right to a new statutory cause of action for the timely delivery of wages. *Id.* at 125. Here, by contrast, the wages owed under the CBA were the basis of the arbitration award, and the Pennsylvania statute acts to expand who must pay and how much is owed.

11

states would have different rights and remedies arising from the same CBA. That potential for inconsistency is unacceptable under the LMRA.[8]

## III.    CONCLUSION

For the foregoing reasons, we will vacate the District Court's grant of judgment on the pleadings, as well as its award of attorneys' fees, and will remand for further proceedings consistent with this opinion.

---

[8] We also note that the District Court was not at liberty to modify the arbitration award as it appeared to do. The parties agree that the FAA restricts the modification of arbitration awards, even when jurisdiction is asserted exclusively under the LMRA. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (mixing and matching FAA and LMRA cases while summarizing the standard for reviewing arbitration awards); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (explaining that, "[w]hen confronted with two Acts of Congress allegedly touching on the same topic … [a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow" (internal quotation marks omitted) (citations omitted)). The arbitrator awarded $240,052.11 for breaches of the CBA. The District Court awarded $325,827.64 in damages, $50,994.16 in attorneys' fees, and expanded liability to officers and agents, based on those same breaches of the CBA. The parties did not argue, nor did the Court explain, how the Guild had met the FAA's restrictive rules for modifying an arbitration award.