FILED

07/12/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0722

DA 15-0722

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 165

RIMROCK CHRYSLER, INC.,

      Petitioner and Appellant,

  and

CHRYSLER GROUP, LLC,

      Franchisor,

STATE OF MONTANA, DEPARTMENT OF
JUSTICE, MOTOR VEHICLE DIVISION,

  and

LITHIA MOTORS, INC., and ITS WHOLLY
OWN SUBSIDIARY, LITHIA OF BILLINGS,
INC., d/b/a LITHIA CHRYSLER JEEP DODGE
OF BILLINGS,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                      In and For the County of Yellowstone, Cause No. DV 14-546
                      Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Rodd A. Hamman, Calton Hamman & Wolff, P.C., Billings, Montana

            Robert C. Byerts, Bass Sox Mercer, Tallahassee, Florida

      For Appellee Lithia Motors:

            Paul N. Tranel, Bohyer, Erickson, Beaudette & Tranel, P.C.,
            Missoula, Montana

            Robert Y. Weller II, Kristen L. Baiardi, Abbott Nicholson, P.C.,
            Detroit, Michigan

For Franchisor Chrysler Group:

Robert Sterup, Holland & Hart, LLP, Billings, Montana

Submitted on Briefs:  May 18, 2016

Decided:  July 12, 2016

Filed:

Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Rimrock Chrysler, Inc., appeals the order of the Thirteenth Judicial District Court, Yellowstone County, denying Rimrock's motion to vacate an administrative proceeding and its motion to dismiss for lack of jurisdiction. We restate the issues on appeal as follows:

> 1. *Whether the District Court erred by assuming subject matter jurisdiction to review Lithia Motors' administrative protest of New Chrysler's Notice of Intent to establish an additional Chrysler-Jeep dealership in Billings, Montana.*
>
> 2. *Whether the District Court erred by dismissing Rimrock's petition for judicial review on the grounds of mootness and lack of a justiciable controversy.*

¶2 We affirm the District Court's order denying Rimrock's motion to dismiss and motion to vacate the administrative decision of the Montana Department of Justice, Motor Vehicle Division (Department). We reverse the District Court's order dismissing Rimrock's petition for judicial review and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Lithia Motors, Inc., acquired a Dodge franchise in Billings in 2003. At that time, Dodge was a division of Chrysler, LLC (Old Chrysler). In April 2009, Old Chrysler filed for bankruptcy. As part of the bankruptcy restructuring, Old Chrysler rejected 789 existing dealer agreements, including that of Rimrock in May 2009. Most of Old Chrysler's assets were sold to Chrysler Group, LLC (New Chrysler). In July 2009, New Chrysler awarded a Chrysler-Jeep franchise to Lithia to sell all of the Chrysler line in Billings.

3

¶4    Rimrock successfully pursued arbitration of its franchise termination under § 747 of the United States Consolidated Appropriations Act of 2010. Consolidated Appropriations Act of 2010, Pub. L. No. 117, § 747(d), 123 Stat. 3034, 3220 (2009). In June 2010, Rimrock was awarded the sole remedy provided in § 747, a "customary and usual letter of intent" to enter into a dealer agreement. Section 747(e), 123 Stat. at 3221. Thereafter, New Chrysler filed with the Department, as required by § 61-4-205(3), MCA, a notice of intent to establish a Chrysler-Jeep dealership at Rimrock.

¶5    Soon after New Chrysler filed its notice of intent, Lithia filed an administrative protest pursuant to § 61-4-206(1), MCA. Lithia's protest was based on Lithia being an existing franchise of the same line-make in the same community. *See* § 61-4-206(1), MCA. The Department appointed a hearing officer to conduct a contested case hearing pursuant to § 61-4-206(2), MCA. The hearing officer issued proposed findings of fact and conclusions of law sustaining Lithia's protest and concluding that New Chrysler was not authorized to establish an additional Chrysler-Jeep dealership at the Rimrock location. Both New Chrysler and Rimrock filed exceptions to the hearing officer's decision. Following oral argument, the Department issued a final decision adopting the hearing officer's proposed order.

¶6    Rimrock filed a petition for judicial review before the District Court pursuant to §§ 61-4-206(7) and 2-4-702, MCA, requesting reversal of the Department's decision. New Chrysler did not join Rimrock's petition or file its own. Lithia filed a motion to dismiss Rimrock's petition based on New Chrysler's failure to request review. The court granted Lithia's motion on August 25, 2014, concluding that because New Chrysler had

4

abandoned any interest in the proceeding, effective relief could not be rendered and the matter was moot. Rimrock appealed to this Court.

¶7 In the meantime, New Chrysler had named Rimrock as a defendant in a declaratory judgment action in federal court in Detroit, Michigan.[1] Rimrock moved to dismiss itself from the Michigan litigation on the ground that resolution of the issues in the Montana administrative proceeding would "conclusively resolve the issues concerning Rimrock." Rimrock and New Chrysler entered into a settlement agreement in the Michigan case on May 6, 2011. The Settlement Agreement provided for the dismissal with prejudice of New Chrysler's claims against Rimrock and of all defenses, claims, and counterclaims that could have been raised by Rimrock. It provided further that "Rimrock unequivocally states that it will not assert any argument, in any forum or proceeding, that § 747 generally preempts Montana state dealer laws or, in particular, precludes a protest of the establishment of Rimrock pursuant to the Arbitration Order." As provided in the Settlement Agreement, Rimrock and New Chrysler stipulated to dismiss the federal litigation with prejudice, and the Michigan federal court dismissed Rimrock from the litigation on May 10, 2011.[2]

¶8 Before this Court issued a decision in Rimrock's first appeal, the Sixth Circuit Court of Appeals ruled in the Michigan case that § 747 preempted state regulation of new dealerships issued under dealership protest laws in Michigan and Nevada. *Chrysler*

---

[1] Lithia also was named as a defendant, as the dealer who would be impacted by Rimrock's establishment.

[2] Lithia also was dismissed from the Michigan litigation.

*Group LLC v. Fox Hills Motor Sales, Inc.*, 776 F.3d 411, 423-24 (6th Cir. 2015). The Sixth Circuit held:

> Michigan's and Nevada's state dealer protest laws, in particular, frustrate Congress's purpose in enacting § 747 because they permit state officials to delay and possibly nullify the effect of federal arbitration. Congress intended the federal arbitration to determine whether there is good cause for a terminated dealer to be added to New Chrysler's dealer networks. To that end, Congress placed within the discretion of the arbitrator the decision of "whether the franchise agreement at issue is to be renewed, continued, assigned or assumed by the covered manufacturer." § 747(d). State dealer protest laws create a process by which a state official subsequently and independently determines whether there is good cause for the new dealerships to have a sales and service agreement. This second, parallel determination of good cause impermissibly grants state officials the power to review the federal arbitral decisions.

*Chrysler Group LLC*, 776 F.3d at 424. This Court dismissed Rimrock's appeal without prejudice and remanded it to the District Court to consider the Sixth Circuit's decision and to rule upon issues of subject matter jurisdiction, federal preemption of state law, and whether § 61-4-206(1)(b), MCA, added by the Legislature in 2013, had any effect on the case. *Rimrock Chrysler, Inc. v. Mont. Dep't of Justice, Motor Vehicle Div.*, No. DA 14-0590, Or. (Mont., June 9, 2015).

¶9 On remand, Rimrock filed a motion to vacate the administrative proceeding and dismiss on the ground that § 747 preempted Montana dealer protest laws and deprived the State of Montana of subject matter jurisdiction to hear the administrative claim. New Chrysler and Lithia filed briefs in opposition, arguing that the Sixth Circuit's decision was mistaken and that Rimrock had waived its preemption arguments. The District Court denied Rimrock's motion and dismissed the appeal on the basis of its August 2014 order. The court concluded that it had subject matter jurisdiction over the action and that

Rimrock had expressly agreed to adjudicate its dispute in the Montana administrative forum. The court held that although § 747 may preempt Montana law in very "narrow, and unique circumstance[s]" going forward, it did "not affect the outcome already reached" in this case, and § 61-4-206(1)(b), MCA, was not applicable. Rimrock appeals.

## STANDARDS OF REVIEW

¶10 We review de novo a district court's determination regarding its subject matter jurisdiction. *Comm'r of Political Practice for Mont. v. Bannan*, 2015 MT 220, ¶ 7, 380 Mont. 194, 354 P.3d 601. A district court's decision to grant or deny a motion to dismiss for lack of subject matter jurisdiction is a question of law that we review for correctness. *Interstate Explorations, LLC v. Morgan Farm & Ranch, Inc.*, 2016 MT 20, ¶ 6, 382 Mont. 136, 364 P.3d 1267 (citing *Pickett v. Cortese*, 2014 MT 166, ¶ 11, 375 Mont. 320, 328 P.3d 660).

¶11 Mootness is a question of a law that we review de novo. *Alexander v. Bozeman Motors, Inc.*, 2012 MT 301, ¶ 20, 367 Mont. 401, 291 P.3d 1120.

## DISCUSSION

¶12 *1. Whether the District Court erred by assuming subject matter jurisdiction to review Lithia's administrative protest of New Chrysler's Notice of Intent to establish an additional Chrysler-Jeep dealership in Billings, Montana.*

¶13 In 2008, the federal government sought to address the problems affecting the auto industry through the Automotive Industry Financing Program (AIFP), a component of the Troubled Asset Relief Program (TARP). Old Chrysler received a $4 billion loan through TARP in exchange for a security interest in all of Old Chrysler's assets, to be held by the United States Treasury. *Chrysler Group LLC*, 776 F.3d at 415 (citing *In re Chrysler*

7

*LLC*, 405 B.R. 84, 89-90 (Bankr. S.D.N.Y. 2009)).  After Old Chrysler and General Motors filed for bankruptcy, resulting in the termination of a significant number of local dealerships across the United States, Congress sought to protect the interests of the rejected auto dealers by enacting § 747 of the Consolidated Appropriations Act of 2010. *Chrysler Group LLC*, 776 F.3d at 417-18.  Section 747 was intended to "establish a disclosure and arbitration process to determine whether dealers that had their franchise agreements terminated or not assumed by a successor company should be added to dealer networks of automobile manufacturers partially owned by the Federal Government." *Chrysler Group LLC*, 776 F.3d at 418 (citing H.R. Rep. No. 111-366, at 942) (2009) (Conf. Rep.)) (internal quotation marks omitted).

¶14    Section 747 creates an arbitration right for covered dealerships terminated during the franchisor's bankruptcy.  "A covered dealership may elect to pursue the right to binding arbitration with the appropriate covered manufacturer."  Section 747(d), 123 Stat. at 3220.  A "covered dealership" is

> an automobile dealership that had a franchise agreement for the sale and service of vehicles of a brand or brands with a covered manufacturer in effect as of October 3, 2008, and such agreement was terminated, not assigned in the form existing on October 3, 2008, to another covered manufacturer in connection with an acquisition of assets related to the manufacture of that vehicle brand or brands, not renewed, or not continued during the period beginning on October 3, 2008, and ending on December 31, 2010.

Section 747(a)(2), 123 Stat. at 3220.  A "covered manufacturer" is "an automobile manufacturer in which the United States Government has an ownership interest, or to which the Government has provided financial assistance under [TARP]."  Section

747(a)(1)(A), 123 Stat. at 3219. The parties do not dispute that Rimrock is a "covered dealership" within the scope of § 747.

¶15 In considering whether a covered dealership should be added to the dealer network of a covered manufacturer, § 747 commands the arbitrator to

> balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large and . . . decide, based on that balancing, whether or not the covered dealership should be added to the dealer network of the covered manufacturer.

Section 747(d), 123 Stat. at 3220. If the arbitrator rules in favor of the covered dealership, the covered manufacturer "shall . . . provide the dealer a customary and usual letter of intent to enter into a sales and service agreement." Section 747(e), 123 Stat. at 3221.

¶16 Section 747(f) allows the parties to opt out of the arbitration process and participate in voluntary negotiation: "Any legally binding agreement resulting from a voluntary negotiation between a covered manufacturer and covered dealership(s) shall not be considered inconsistent with this provision and any covered dealership that is a party to such agreement shall forfeit the right to arbitration established by this provision." Section 747(f), 123 Stat. at 3221.

¶17 Montana's dealer protest laws, passed in 1977, allow an existing franchisee to object to the establishment of a new or additional motor vehicle dealership of the same line-make by filing a written objection with the Department. Section 61-4-206(1)(a), MCA. Section 61-4-207(3), MCA, provides specific criteria that guide the Department in

9

determining whether good cause exists for entering into an additional franchise of the same line-make.[3]

¶18     The District Court held that Montana's dealer protest laws were "substantially similar" to both § 747 and Michigan's good cause statutes.  The District Court concluded, however, that § 747 did not preempt Montana's dealer protest laws in this case because "it was not intended to be applied retroactively," and because "Lithia's protest, the administrative hearing, and this Court's dismissal all took place before the Sixth Circuit issued its *Chrysler Group* decision."

¶19     The District Court concluded also that Rimrock had waived its opportunity to argue preemption.  The court based its waiver decision on the fact that Rimrock had sought to "avoid litigation in Federal Court in Michigan" by entering into the Settlement Agreement with New Chrysler in which it agreed to proceed in Montana and to not raise the issue of preemption.  According to the court, Rimrock "expressly and conclusively agreed to be bound in several different documents by the decisions in Montana.  It cannot

---

[3] In 2013, the Montana Legislature added a provision to § 61-4-206, MCA, that prohibits an existing franchise from protesting the proposed establishment of an additional franchise of the same line-make "if the proposed additional franchise was first terminated by a franchisor and the franchise was subsequently awarded back by a legal or administrative proceeding to the franchisee from whom the franchise was terminated."  Section 61-4-206(1)(b), MCA.  On remand from this Court's June 9, 2015 Order, the District Court determined that the 2013 amendment expressly prohibited retroactive application and was not applicable in this case.  The parties do not contest this ruling.

10

now reverse course by abrogating a settlement agreement upon which both Lithia and Chrysler have relied."[4]

¶20 Rimrock argues first that the District Court "confused the issue of the retroactive application [of] state law under the 2013 Montana amendment with the application of federal preemption under Section 747." Rimrock contends that the procedural posture of the case and the timing of the Sixth Circuit's decision are "irrelevant to whether subject matter jurisdiction existed in 2011" because § 747 preempted Montana law upon its enactment in 2010. The Sixth Circuit decision, according to Rimrock, "was merely enforcing federal law on the books since 2010." Therefore, Rimrock argues, "this proceeding has been void from the beginning."

¶21 Rimrock argues next that the District Court erred by holding that Rimrock waived its ability to contest subject matter jurisdiction by entering into the Settlement Agreement and then participating in the Montana proceeding, "because subject matter jurisdiction is never waived." Rimrock points out that in our July 9, 2015 Order, this Court ruled that subject matter jurisdiction may be raised at any time and that a party cannot waive or consent to jurisdiction when there is no basis for jurisdiction in law. *Thompson v. State*, 2007 MT 185, ¶ 28, 338 Mont. 511, 167 P.3d 867. Rimrock argues, "Once the Sixth Circuit ruled Congress preempted state law, that decision affected the State of Montana

---

[4] New Chrysler filed a brief in this case stating that it was never a party to the judicial review and is not an appellant or appellee in this case. It affirmed that it participated through the administrative proceeding and then elected not to proceed further. New Chrysler states that it "takes no position in this appeal" and "asserts no position with regard to Rimrock's legal arguments or factual assertions, or those of [Lithia]."

11

and Rimrock had every right to bring that legal development to the attention of the Montana Supreme Court."

¶22 Finally, Rimrock contends that Lithia's argument that federal preemption is a waivable affirmative defense "misstate[s] the law." Rimrock argues that the case law on which Lithia relies fails to take into consideration the distinction in the law between preemption of law, which may be waived, and preemption of forum, which may not.

¶23 Lithia argues that the District Court properly held that Montana had subject matter jurisdiction because Rimrock voluntarily chose to waive its preemption defense. Relying on *Winslow v. Montana Rail Link, Inc.*, 2005 MT 217, ¶¶ 37-38, 328 Mont. 260, 121 P.3d 506, Lithia claims that "[w]hen preemption is an affirmative defense, it may be waived." Lithia argues that Rimrock made a "voluntary business decision," upon which Lithia relied, "to proceed under and be bound by Montana state law in connection with the Montana administrative proceedings."

¶24 We begin by addressing whether Rimrock waived its ability to argue preemption. Generally, "an affirmative defense is waived if not set forth affirmatively." *Winslow*, ¶ 38 (quoting *Nitzel v. Wickman*, 283 Mont. 304, 312, 940 P.2d 451, 456 (1997)) (internal quotation marks omitted). This rule applies to a defense of federal preemption of state law. *See Winslow*, ¶ 38 (concluding that ERISA[5] preemption in benefits-due actions "must be pleaded timely as an affirmative defense").

¶25 The United States Supreme Court has held, however, that where a federal preemption defense affects the choice of forum rather than the choice of law it is a matter

_____

[5] Employment Income Retirement Security Act of 1974, 29 U.S.C. §§ 1001-1461.

of jurisdiction and not waivable. *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 390-91 & n.9, 106 S. Ct. 1904, 1912 & n.9 (1986). In *Davis*, the Supreme Court considered whether the International Longshoremen's Association (ILA) had waived its argument that the National Labor Relations Act, 29 U.S.C. §§ 151-169, preempted state law when it failed to comply with state procedural rules governing affirmative defenses. *Davis*, 476 U.S. at 385-86, 106 S. Ct. at 1909. The Court held that the ILA had not waived its preemption argument by noncompliance with state procedural rules and that the state court "erred in declining to address that claim on the merits." *Davis*, 476 U.S. at 399, 106 S. Ct. at 1916. The Court concluded that "when a state proceeding or regulation is claimed to be pre-empted by the NLRA . . . the issue is a choice-of-forum rather than a choice-of-law question. As such, it is a question whether the State or the [National Labor Relations] Board has jurisdiction over the dispute." *Davis*, 476 U.S. at 391, 106 S. Ct. at 1912. The Court noted, however, that its decision in *Davis* "does not apply to pre-emption claims generally but only to those pre-emption claims that go to the State's actual adjudicatory or regulatory power as opposed to the State's substantive laws." *Davis*, 476 U.S. at 391 n.9, 106 S. Ct. at 1912 n.9.

¶26 Accordingly, courts must consider whether a party's preemption argument "is in the nature of an affirmative defense that must be asserted in the trial court or be considered forever waived or whether it is in the nature of a challenge to a court's power to adjudicate that may be raised at any time." *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1496 (9th Cir. 1986) (citing *Davis*, 476 U.S. at 381-82, 106 S. Ct. at 1907). If the latter, a party is not barred from first raising the issue on appeal. *Gilchrist*, 803 F.2d

13

at 1497. *See also Wolf v. Reliance Standard Life Ins.*, 71 F.3d 444, 449 (1st Cir. 1995) (holding that "ERISA preemption in a benefits-due action is waivable, not jurisdictional, because it concerns the substantive law but does not implicate the power of the forum to adjudicate the dispute").

¶27 Whether the "nature" of a preemption claim is one of choice of law or choice of forum "depend[s] on congressional intent in enacting the particular pre-empting statute." *Davis*, 476 U.S. at 391 n.9, 106 S. Ct. at 1912 n.9. The issue is not whether Congress intended to replace state law with a federal regulatory scheme but "whether jurisdiction provided by state law is itself pre-empted by federal law vesting exclusive jurisdiction over that controversy in another body." *Davis*, 476 U.S. at 387-88, 106 S. Ct. at 1910. The *Davis* Court "found a strong congressional intent to oust the state court as a forum" based on its belief

> that Congress intended to confide primary interpretation and application of its rules to a *specific and specially constituted tribunal*, namely, the National Labor Relations Board which would follow a specially constituted procedure, which would develop knowledge of, and expertise in, labor relations, and which would develop and apply nationally uniform labor-relations principles and practice. And, the Court apparently believed that Congress intended this *to the point* where Congress (sub silentio in the statutes) refused to permit parties to submit such a dispute to the courts even where the parties themselves wished to do so.

*Sweeney v. Westvaco Co.*, 926 F.2d 29, 38-39 (1st Cir. 1991) (citing *Davis*, 476 U.S. at 389-91, 106 S. Ct. at 1911-12) (emphasis in original) (internal citations and quotation marks omitted). In other words, where Congress has designated another forum for the resolution of a certain class of disputes, such designation deprives the courts of jurisdiction to decide those cases. *See Sweeney*, 926 F.2d at 37.

14

¶28    In contrast with the NLRA considered in *Davis*, courts considering choice of law versus choice of forum issues in other acts of Congress have found no intent "to oust the state as a forum."  In *Sweeney*, the First Circuit Court of Appeals held that Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), unlike Sections 7 and 8 of the NLRA, concerns what law a decision maker must apply, not what forum decides the dispute.  *Sweeney*, 926 F.2d at 39.  In that case, a party had argued that LMRA concerns choice-of-forum preemption because it "reflects a congressional intent that arbitrators (not courts) develop and explain the meaning of terms in a collective bargaining agreement."  *Sweeney*, 926 F.2d at 38.  The court disagreed based on its belief that Congress did not intend to "foreclose parties from submitting such disputes to judicial fora."  *Sweeney*, 926 F.2d at 39 (emphasis omitted).  The court observed that the law "clearly permits parties to opt out of arbitration-based dispute-resolving mechanisms, and to have courts decide those disputes instead."  *Sweeney*, 926 F.2d at 39.  The court noted further that, because "the law does not require that collective bargaining agreements provide for grievance and arbitration procedures," in some cases courts, not arbitrators, must decide disputes arising under the agreement.  *Sweeney*, 926 F.2d at 39.  Finally, the court observed that, "even if an agreement does provide for such mechanisms . . . , the parties to a dispute may waive the benefit of these procedures."  *Sweeney*, 926 F.2d at 39.

¶29    In *Wolf*, the First Circuit held that the argument that a state law claim was preempted by ERISA affected the choice of law, not the choice of forum.  *Wolf*, 71 F.3d at 449.  The court considered the plain language of ERISA's jurisdictional provision,

which provides, "'State courts of competent jurisdiction and district courts of the United States shall have *concurrent jurisdiction of actions*.'" *Wolf*, 71 F.3d at 448 (quoting 29 U.S.C. § 1132(e)(1)) (emphasis in original). The court concluded that the plain language of the statute "tells us that if a plaintiff brought a 'benefits-due' action in state court and the defendant pleaded ERISA preemption, this would not deprive the court of jurisdiction over the subject matter; rather, ERISA preemption in that situation would dictate the applicable law." *Wolf*, 71 F.3d at 448. The court considered Congressional intent, concluding that "the interests in uniformity which Congress hoped to serve in ERISA did not extend to permitting defendant corporations, often more sophisticated about ERISA than individual plaintiffs, to sit on their hands and not claim the defense until the last minute." *Wolf*, 71 F.3d at 448.

¶30    In this case, although Congress provided an express remedy of federal arbitration for terminated dealers, § 747 "clearly permits parties to opt out of arbitration-based-dispute resolving mechanisms," *Sweeney*, 926 F.2d at 39, and to allow parties to create legally binding agreements through voluntary negotiations instead, Section 747(f), 123 Stat. at 3221. Section 747(f) expressly provides that "*[a]ny* legally binding agreement resulting from a voluntary negotiation between a covered manufacturer and covered dealership(s) *shall not be considered inconsistent with this provision*." Section 747(f), 123 Stat. at 3221 (emphasis added). The conference report on § 747 demonstrates further Congress's intent to afford parties alternate avenues of dispute resolution:

> The conference agreement would permit covered manufacturers and dealers to [sic] also, where they both prefer, to use voluntary negotiation outside

16

the arbitration process where possible to resolve issues of possible dispute, including equitable compensation.

H.R. Rep. No. 111-366, at 943 (2009) (Conf. Rep.). Thus, it is evident that Congress did not intend to "vest[ ] exclusive jurisdiction" in the federal arbitration process. *Davis*, 476 U.S. at 388, 106 S. Ct. at 1910. Although it did not provide explicit authority for concurrent state and federal court jurisdiction, Congress permitted covered dealers and covered manufacturers to negotiate outside of federal arbitration if they agreed to do so. Rimrock and New Chrysler unequivocally did agree to do so when they entered a written agreement to be bound by the Department's proceedings.

¶31 Based on the foregoing analysis, we conclude that § 747 preemption is "in the nature of an affirmative defense that must be asserted in the trial court or be considered forever waived." *Gilchrist*, 803 F.2d at 1496. Consequently, Rimrock waived its § 747 preemption defense when it entered into the Settlement Agreement and agreed that it would not raise § 747 preemption as a defense. Accordingly, the District Court concluded correctly, albeit for slightly different reasons, that it "retain[ed] subject matter jurisdiction" over this case. Having determined that Rimrock waived its § 747 preemption defense, we decline to examine whether § 747 preemption applies in this case. We affirm the District Court's November 12, 2015 Order.

¶32 *2. Whether the District Court erred by dismissing Rimrock's petition for judicial review on the grounds of mootness and lack of a justiciable controversy.*

¶33 In its August, 25, 2014 Order, the District Court dismissed Rimrock's petition for judicial review on the grounds of mootness and lack of a justiciable controversy. The court concluded that under the Montana Dealer Act, New Chrysler bears the burden of

proof to establish good cause to add Rimrock as another Chrysler-Jeep franchisee in Billings. Thus, according to the court, "it is impossible for Rimrock to establish itself as a Chrysler-Jeep franchisee without the approval of and action by Chrysler to enter into a dealer agreement." The court concluded that because New Chrysler decided not to appeal the Department's final decision, the court "has no jurisdiction to enter a judgment" requiring that New Chrysler "take any action whatsoever." The court noted that, without New Chrysler, the issues set forth in Rimrock's petition for judicial review "are merely abstract or hypothetical questions" and would require the court to issue "an impermissible advisory opinion." As such, the court concluded that New Chrysler's decision not to appeal the Department's final decision "is an intervening change in the status of the parties that makes it impossible for [the District Court] to render effective relief on appeal."

¶34 Rimrock has asked this Court to incorporate by reference its opening and reply brief from its appeal of the District Court's August 2014 Order.[6] In that appeal, Rimrock argued that the District Court was wrong "in both its premise and conclusion." Rimrock contended that the court could have granted relief because Rimrock had asked only that the court order the Department to take action—by reversing its decision and approving

_____

[6] Rule 12 of the Montana Rules of Appellate Procedure requires that an argument section of a brief "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor with citations to the authorities, statutes, and pages of the record relied on." M. R. App. P. 12(1)(g). "Simply put, appellate arguments must be contained within the appellate brief, not within some other document," and parties are precluded "from incorporating trial briefs or any other kind of argument into appellate briefs by mere reference." *Stock v. State*, 2014 MT 46, ¶ 17 n.3, 374 Mont. 80, 318 P.3d 1053. In this case, however, because we remanded the first appeal for consideration of threshold issues without considering the merits, we will consider both Rimrock's and Lithia's briefs from the first appeal.

New Chrysler's notice of intent to issue a license to Rimrock. Rimrock contended further that New Chrysler was a party to the case because the court had jurisdiction over it when New Chrysler acknowledged service and filed an answer. Therefore, according to Rimrock, "Chrysler will be bound by the Court's decision whatever that may be." Finally, Rimrock argued that it had the right to seek judicial review of the administrative decision regardless of New Chrysler's involvement. Rimrock asserted that the Montana Administrative Procedures Act (MAPA) "does not require the original applicant to join in a petition for judicial review. On the contrary, MAPA expressly provides that **any person** who has exhausted all administrative remedies and who is aggrieved by final decision is entitled to judicial review." Rimrock contends that our jurisprudence is consistent with its interpretation of MAPA.

¶35 Lithia argued in the first appeal, and argues again here, that the District Court correctly dismissed Rimrock's petition for judicial review due to mootness and lack of justiciable controversy. Lithia argues that "[i]t is disingenuous for Rimrock to suggest that it is not asking this Court to require Chrysler to take any action" because "any order this Court could issue that would be favorable to Rimrock would either require Chrysler to participate on remand in further administrative proceedings or to comply with the letter of intent to establish the Rimrock dealership." Lithia argues further that the cases cited by Rimrock in its first appeal brief are "distinguishable" because they "fail to account for the unique statutory framework of the Montana Dealer Act, which mandates the participation of the manufacturer in an establishment proceeding."

19

¶36    The Montana Dealer Act, found in Title 61, Chapter 4, Part 2, MCA, regulates the distribution of new motor vehicles in the State of Montana.  The Act regulates specifically the relationship between franchisors and new motor vehicle dealers.  *See* § 61-4-203, MCA ("The department shall supervise and regulate all persons required by this part to be licensed.").  A franchisor may not establish an additional dealership in any community in which the same line-make is represented unless there is good cause and it is in the public interest.  Section 61-4-205(2), MCA.  An existing same line-make dealer has the right to protest where a franchisor gives notice under § 61-4-205(4), MCA, that it intends to establish an additional dealership in the community in which the same line-make is represented already.  Section 61-4-206(1), MCA.  "Upon hearing or upon objection to the establishment of a new motor vehicle dealership, the franchisor bears the burden of proof to establish that good cause exists to terminate, not continue, or not establish the franchise."  Section 61-4-206(3), MCA.[7]  Section 61-4-206(7), MCA, allows any party to the hearing to appeal the Department's final decision in accordance with the MAPA procedures for judicial review.  *Shamrock Motors, Inc. v. Chrysler Corp.*, 1999 MT 39, ¶ 14, 293 Mont. 317, 974 P.2d 1154.

---

[7] Although it does not prove critical to our analysis here, we observe that the language of the statute appears contradictory with other provisions in the part governing the establishment of an additional new motor vehicle dealership.  Because the franchisor is the party that files a notice of intention "to enter into a franchise for additional representation of the same line-make," § 61-4-205(3), MCA, it is confusing to say that the franchisor then bears the burden of showing good cause exists to "***not*** establish the franchise," § 61-4-206(3), MCA (emphasis added).  The confusion arose when the statute was amended in 1997: the phrase, "or not establish the franchise," was added in place of a former sentence that read, "When there is an objection to the establishment of a new motor vehicle dealership, the burden of proof that good cause does exist shall be with the franchisor."  1997 Mont. Laws ch. 221, § 10.  The Legislature may wish to revisit this section.

¶37    MAPA affords an opportunity for judicial review of an administrative decision to "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final written decision in a contested case."  Section 2-4-702(1)(a), MCA.  "Copies of the petition must be promptly served upon the agency and all parties of record."  Section 2-4-702(2)(a), MCA.  A petition for judicial review resembles an appeal. *Hilands Golf Club v. Ashmore*, 277 Mont. 324, 330, 922 P.2d 469, 473 (1996).  The parties are required to have "exhausted all administrative remedies available within the agency" before seeking judicial review.  Section 2-4-702(1)(a), MCA.  "As a result, the parties already have been defined through their appearance at, and participation in, the administrative proceedings." *Forsythe v. Great Falls Holdings, LLC*, 2008 MT 384, ¶ 20, 347 Mont. 67, 196 P.3d 1233 (citing *Hilands Golf Club*, 277 Mont. at 331, 922 P.2d at 474).  Thus, the mailing of a copy of the petition upon a party is sufficient to vest the District Court with jurisdiction over that party. *Hilands Golf Club*, 277 Mont. at 332, 922 P.2d at 474.  On judicial review, the district court may affirm the agency's decision, remand the case for further proceedings, or reverse the agency's decision if the appellant's substantial rights have been prejudiced.  Section 2-4-704(2), MCA.

¶38    "[W]e encourage a liberal interpretation of procedural rules governing judicial review of an administrative decision, rather than taking an overly-technical approach, so as best to serve justice and allow the parties to have their day in court." *Hilands Golf Club*, 277 Mont. at 330, 922 P.2d at 473.  In this case, Rimrock is a party "aggrieved by" the Department's decision.  Section 2-4-702(1)(a), MCA.  Rimrock served the petition on

21

New Chrysler, Lithia, and the Department by mail. Although New Chrysler filed an answer disavowing participation in the appeal, Rimrock's mailing of the petition to New Chrysler was "sufficient to vest the District Court with jurisdiction" over New Chrysler. *Hilands Golf Club*, 277 Mont. at 332, 922 P.2d at 474.

¶39 The judicial power of Montana courts "is limited to 'justiciable controversies.'" *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567. A justiciable controversy is "one upon which a court's judgment will effectively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical or academic conclusion." *Clark v. Roosevelt Cnty.*, 2007 MT 44, ¶ 11, 336 Mont. 118, 154 P.3d 48. Mootness is a category of justiciability. *Plan Helena, Inc.*, ¶ 8. A matter is moot "if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position." *Alexander*, ¶ 28 (citing *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 17, 364 Mont. 390, 276 P.3d 867; *Greater Missoula Area Fed'n of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881). "The intervening events which may render a case moot are of varied character" and include the "conduct of the parties." 2 Am. Jur. 2d *Administrative Law* § 573 (1962). "But intervening events do not render a controversy moot where it is still possible for the reviewing court, if it should decide the case in favor of the party seeking relief, to grant him some effectual relief . . . ." 2 Am. Jur. 2d *Administrative Law* § 573.

¶40 New Chrysler's failure to participate in the judicial review proceeding does not prevent the court from granting Rimrock some effectual relief. Rimrock's petition

requested that the court "review and reverse the [Department's] decision to disallow the establishment of Rimrock as an additional Chrysler Jeep dealership in [Billings]." In the alternative, Rimrock requested that the court

> remand the matter to the Department with instructions to make findings concerning all existing circumstances relevant to the establishment of Rimrock . . . [and] to make findings concerning the public interest in the establishment of Rimrock . . . and, in making such findings, to note the purpose of Section 61-4-205(2), MCA is to protect existing dealers from arbitrary or capricious action by the manufacturer and resulting substantial injury.

Contrary to Lithia's argument, the District Court could grant Rimrock "effective relief" on its petition without ordering New Chrysler to do anything. *Alexander*, ¶ 28. If the court were to reverse the Department's decision, it would "restore [Rimrock] to [its] original position." *Alexander*, ¶ 28. That is, Rimrock would be in the same position as it was before Lithia filed its protest—the recipient of a letter of intent from New Chrysler. If at that point, Rimrock were to request that New Chrysler honor the letter of intent and enter into a dealer agreement with Rimrock, such an action would be a matter between Rimrock and New Chrysler, wholly distinct from the current case. Similarly, if the court were to remand the case to the Department, that would not be a judgment enforceable against New Chrysler. It would simply return Lithia's protest to the Department, at which time New Chrysler may choose whether to contest the protest and attempt to establish good cause. Furthermore, if the District Court were to hold against Rimrock by upholding the Department's decision, still, New Chrysler would not be compelled to take any action as a result of the District Court's ruling. Rather, New Chrysler would remain bound by the Department's decision, issued in a proceeding in which it participated and

23

from which it did not appeal. If the court were to affirm the Department's decision, it simply would leave New Chrysler in the same position that it was in prior to the appeal. The foregoing analysis establishes that judicial review of and final order on the merits of Rimrock's petition would "effectively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical or academic conclusion." *Clark*, ¶ 11. Accordingly, Rimrock's petition for judicial review involved a justiciable controversy and the court erred in concluding otherwise.

## CONCLUSION

¶41 We affirm the District Court's November 12, 2015 Order denying Rimrock's motion to vacate the Department's administrative decision and to dismiss the judicial review proceeding for lack of subject matter jurisdiction. We reverse the District Court's August 25, 2014 Order dismissing Rimrock's petition for judicial review. The matter is remanded for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE